FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 23, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMANDA P.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:21-cv-03021-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> **ECF Nos. 15, 16** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 16.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 11, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging an amended disability onset date of September 11, 2015.[2] Tr. 16, 261, 358-63, 705. The application was denied initially, and on reconsideration. Tr. 283-91, 295-301. Plaintiff appeared before an administrative law judge (ALJ) on August 11, 2017. Tr. 239-60. On February 28, 2018, the ALJ denied Plaintiff's claim. Tr. 13-33. Plaintiff appealed the decision to the Appeals Council, which declined to review the decision. Tr. 1-7. Plaintiff then appealed the decision to this Court, which resulted in a remand. Tr. 792-801. On October 27, 2020, a remand hearing was held. Tr. 729-52. On November 23, 2020, the ALJ again denied Plaintiff's claim. Tr. 702-28.

---

[2] Plaintiff previously applied for Title XVI benefits in 2005, 2006, 2009, and 2012, and she applied for Childhood Disability Beneficiary benefits in 2005; the applications were denied at the initial and reconsideration levels and were not appealed. Tr. 263, 756.

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 11, 2015.  Tr. 707.  At step two, the ALJ found that Plaintiff has the following severe impairments: learning disorder (math); knee impairment (knee pain status post-dislocated patella); obesity; anxiety related disorder; and depression.  Tr. 708.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 709.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds with no limits on sitting, standing, or walking during the workday.  Postural activities include frequent climbing of steps [and] stairs, occasional climbing of ladders, ropes, and scaffolds, frequent balance, stoop, crouch, kneel, and crawl.  Manipulative capabilities[:] no limits reaching in all directions, no limits on hand[l]ing, fingering, or feeling and no environmental limits.  [Plaintiff] can understand, remember, and carry out simple instructions and exercise simple workplace judgment.  She can perform work that is learned on the job in less than 30 days by short demonstration and practice or repetition.  She can respond appropriately to supervisors and coworkers and can deal with occasional changes in the work environment.  She has no difficulty working with the public.

Tr. 711.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 719.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that

ORDER - 7

existed in significant numbers in the national economy that Plaintiff could perform, such as marker, assembler II, and cashier II. Tr. 720. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence. ECF No. 15 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 15 at 6-12. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an

ORDER - 8

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 712.

*1. Inconsistent Objective Medical Evidence*

The ALJ found Plaintiff's symptom allegations were inconsistent with the

objective medical evidence.  Tr. 713-14.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

ORDER - 10

1  F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

2  1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

3  F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a

4  relevant factor, along with the medical source's information about the claimant's

5  pain or other symptoms, in determining the severity of a claimant's symptoms and

6  their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

7         First, the ALJ found that Plaintiff's reported physical symptoms were not as

8  severe as she claimed.  Tr. 713.  While Plaintiff alleges significant limitations due

9  to physical impairments, she has had normal gait, range of motion, strength, and

10  straight leg raise testing at multiple examinations.  *Id.* (citing Tr. 478, 1391-93,

11  1461-62).  The ALJ also noted Plaintiff did not appear to be in pain at her

12  appointments.  Tr. 713.  Under the step two analysis, the ALJ considered the

13  imaging that showed no to only mild abnormalities, and normal back examinations,

14  as well as Plaintiff's lack of physical therapy.  Tr. 708.  The majority of the

15  medical records related to Plaintiff's physical symptoms precede her alleged onset

16  date, and the ALJ reasonably found the limited evidence pertaining to Plaintiff's

17  physical symptoms during the relevant period are inconsistent with her claims.

18  Plaintiff does not point to any evidence that contradicts the ALJ's finding.

19         Second, the ALJ found Plaintiff's reported mental health and cognitive

20  symptoms were not as severe as she claimed.  Tr. 713-14.  While Plaintiff alleges

1    disabling psychological limitations, the records generally document Plaintiff

2    having normal orientation, eye contact, mood, affect, thoughts, memory, and

3    attention.  Tr. 713 (citing, e.g., Tr. 468, 510-11, 1060, 1203, 1394).  Plaintiff had

4    some abnormalities on examination, including dysphoric mood, blunted affect, and

5    irritable and reactive behavior, but even at examinations where she had some

6    abnormalities, Plaintiff maintained normal memory and concentration.  Tr. 714

7    (citing Tr. 701, 1305-06, 1320).  While Plaintiff alleges she has anxiety attacks out

8    of nowhere, Tr. 372, she has reported to medical providers she only experiences

9    such attacks when she hears gun shots or fireworks and otherwise denied anxiety-

10   related symptoms, Tr. 1302.  Plaintiff has alleged disability in part due to

11   intellectual disability, but the ALJ noted Plaintiff had a stable, borderline IQ score.

12   Tr. 713-14.

13         Plaintiff argues the records are consistent with her allegations, as the ALJ

14   acknowledged that the records document Plaintiff routinely having abnormalities

15   on examination, including abnormal memory, mood, and behavior.  ECF No. 15 at

16   6-7 (citing Tr. 714).  However, even at appointments where Plaintiff had some

17   abnormalities on examination, the ALJ noted Plaintiff had multiple normal

18   findings.  Tr. 714.  While Plaintiff offers an alternative interpretation of the

19   evidence, the Court may not reverse the ALJ's decision based on Plaintiff's

20   disagreement with the ALJ's interpretation of the record.  *See Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible

to more than one rational interpretation" the court will not reverse the ALJ's

decision). The ALJ's finding that Plaintiff's symptom claims are inconsistent with

the objective evidence is supported by substantial evidence. This was a clear and

convincing reason, along with the other reasons offered, to reject Plaintiff's

symptom claims.

### 2. *Lack of Treatment*

The ALJ found Plaintiff's lack of treatment is not consistent with her

allegations. Tr. 714. An unexplained, or inadequately explained, failure to seek

treatment or follow a prescribed course of treatment may be considered when

evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638

(9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to

seek treatment are appropriate considerations in determining the credibility of a

claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-

66 (9th Cir. 2001). When there is no evidence suggesting that the failure to seek or

participate in treatment is attributable to a mental impairment rather than a

personal preference, it is reasonable for the ALJ to conclude that the level or

frequency of treatment is inconsistent with the alleged severity of complaints.

*Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental

health treatment is partly due to a claimant's mental health condition, it may be

inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

In May 2016, Plaintiff reported she had last seen a physician eight months prior, and she reported no current medical problems. Tr. 714, 1366. In May 2017, Plaintiff reported back pain but stated it was untreated, and reported she did not have a primary care physician and had not had a physical examination with the last year. Tr. 1366. In August 2018, Plaintiff presented to establish care. Tr. 714 (citing Tr. 1448). While Plaintiff alleges disability beginning in September 2015, she reported in May 2016 that she had not had any mental health treatment. Tr. 714. In March 2016, Plaintiff told a provider she did not want therapy because her symptoms do not bother her daily and she wanted to end therapy. Tr. 715 (citing Tr. 1187). During treatment, the records note Plaintiff did not meet criteria for a major mood problem and she was not significantly symptomatic for trauma issues, thus she was diagnosed with a single depressive episode in partial remission. Tr. 714 (citing Tr. 1183). Later, her anxiety was labeled as sub-clinical. Tr. 714 (citing Tr. 698). In July 2017, Plaintiff wanted to end services as she was no longer required to receive mental health services to receive financial benefits. Tr. 714 (citing Tr. 1374). At another appointment, Plaintiff reported she was only engaging in counseling to keep financial benefits. Tr. 715 (citing Tr. 1359).

ORDER - 14

Plaintiff has also reported she is not interested in psychotropic medication for anxiety because her anxiety does not occur that often.  Tr. 715 (citing Tr. 1055, 1057, 1063).

Plaintiff argues the ALJ failed to consider that she did not seek additional mental health services because of her lack of insight into her symptoms, and her personality disorder impairs her decision-making related to treatment.  ECF No. 15 at 8-9 (citing Tr. 438, 511, 701, 988, 1318).  However, some of the cited medical records fall outside of the relevant adjudicative period, and none of the records explicitly state that Plaintiff's impairments limit her ability to access mental health treatment.  Plaintiff did not present any arguments at the hearing regarding her lack of ongoing mental health treatment.  *See* Tr. 733-45.  Further, the ALJ did not find Plaintiff's personality disorder is a severe medically determinable impairment and Plaintiff did not challenge the ALJ's finding.  Tr. 708; ECF No. 15 at 9.  The ALJ's finding that Plaintiff's limited treatment is inconsistent with her allegations is supported by substantial evidence.  The ALJ did not error in failing to consider Plaintiff's reasons for not seeking care, when there is not evidence of such reasons in the medical records and such reasons were not presented to the ALJ.  Further, any error in failing to consider the impact Plaintiff's mental health symptoms may have on her ability to access care is harmless as the ALJ gave other supported

ORDER - 15

reasons to reject Plaintiff's symptom claims, as discussed herein.  *See Molina,* 674

F.3d at 1115.

### 3. Situational Stressors

The ALJ found situational stressors contributed to Plaintiff's symptoms.  Tr.

715.  If a claimant suffers from limitations that are transient and result from

situational stressors, as opposed to resulting from a medical impairment, an ALJ

may properly consider this fact in discounting Plaintiff's symptom claims.  *See*

*Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash.

July 25, 2014) (symptom testimony properly rejected in part because the record

squarely supported the ALJ's conclusion that Plaintiff's symptoms were

attributable to situational stressors rather than impairments mental health

symptoms were situational"); *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD,

2012 WL 5293018, at *5-7 (W.D. Wash. Sept. 24, 2012) (concluding Plaintiff's

stressors appeared to have a constant presence affecting ability to work on a

continuing basis, rather than temporary exacerbation).

The ALJ noted Plaintiff had multiple situations that exacerbated her mental

health symptoms during the relevant period.  Tr. 715.  Plaintiff reported major life

changes that caused stress in November 2015, and she reported going through a

breakup in September 2018.  *Id.* (citing Tr. 473, 1329).  A few months after the

breakup, Plaintiff reported feeling better and being in a new relationship.  Tr. 1329.

ORDER - 16

Plaintiff also testified that her symptoms occurred less frequently when she was not involved in stressful situations. Tr. 715, 742-45. Plaintiff argues that stress consistently aggravated her symptoms, and that such aggravation is consistent with her inability to work due to her symptoms as a job would also exacerbate her symptoms. ECF No. 15 at 10. Any error in the ALJ's analysis that Plaintiff's symptoms are caused by situational stressors is harmless as the ALJ gave other supported reasons to reject Plaintiff's symptom claims, as discussed herein. *See Molina,* 674 F.3d at 1115.

### 4. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living are inconsistent with her allegations. Tr. 715-16. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

ORDER - 17

The ALJ noted Plaintiff has engaged in multiple activities that are inconsistent with her reported limitations. Tr. 712. Plaintiff is able to take public transportation and receives rides from friends. Tr. 712, 715 (citing Tr. 1344). Plaintiff reported spending time socializing with her husband and friends, and she reported going to a party. Tr. 715-16 (citing Tr. 1351, 1356). While Plaintiff alleges she cannot lift more than 10 pounds, Tr. 965, Plaintiff has reported she can lift 30 pounds, Tr. 715 (citing Tr. 1459). Plaintiff has engaged in job hunting, trying to obtain her GED, and getting services from Vocational Rehabilitation, and she obtained a job in December 2018. Tr. 716 (citing Tr. 1184, 1301, 1329, 1422, 1427, 1444). Plaintiff has also reported having no issues with her personal care, and being able to help with house work and care for a cat, prepare her own meals, go out alone, shop, socialize daily, follow written and spoken instructions, handle stress and changes, finish things she starts, and get along with authority figures. Tr. 373-78. Plaintiff reported she has no issues getting along with others, and there has been no changes in her social activities since she reportedly became disabled. Tr. 377. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

## 5. *Employment History*

The ALJ found Plaintiff's allegations were inconsistent with Plaintiff's employment history. Tr. 716. When assessing a Plaintiff's claims, an ALJ may

ORDER - 18

consider a Plaintiff seeking work during a period of alleged disability.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (approving of ALJ's rejection of Plaintiff's symptom testimony in part because Plaintiff sought work during period of alleged disability); *see also Woznick v. Colvin*, No. 6:15-cv-00111-AA, 2016 WL 1718363, at *4 (D. Or. Apr. 29, 2016) (ALJ reasonably discredited Plaintiff's symptom testimony in light of her efforts to seek work); *Lizarraga v. Colvin*, No. CV 14-9116-FFM, 2016 WL 1604704, at *4 (C.D. Cal. Apr. 21, 2016) (same).  Further, Plaintiff's own perception of her ability to work is a proper consideration in determining credibility.  *See* No. 2:16-cv-00402-MKD, *Barnes v. Comm'r of Soc. Sec.*, 2018 WL 545722, at *5 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's preparedness to return to work, even if an optimistic self-assessment, is significant to the extent that the Plaintiff is willing and able to work, as that belief indicates her allegation of symptoms precluding work are not credible.").

The ALJ noted that Plaintiff reported she cannot work because she does not have a GED, rather than due to her disability.  Tr. 250, 460, 716, 1414.  As discussed *supra,* she continued to job hunt, pursue her GED, and engage in employment services during the relevant period.  Tr. 716.  She obtained work in December 2018.  *Id.* (citing Tr. 1329).  Plaintiff had some difficulties with obtaining her GED, but they were related to the weather, transportation, and

1  challenges getting her transcripts, rather than any difficulties due to her symptoms.

2  Tr. 716 (citing Tr. 1280, 1361).  Plaintiff's earning records show some earnings in

3  2016, 2017, 2018, and 2019.  Tr. 910.  She reported her last job was at Dollar Tree

4  in 2019, and it ended because a manager made changes to the schedule without

5  notifying her, and after requesting a transfer to another store, the company instead

6  stated she had quit.  Tr. 737.  Plaintiff did not challenge this reason, thus any

7  argument is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

8  1161 n.2 (9th Cir. 2008).   The ALJ reasonably found Plaintiff's work history,

9  including her job hunting, pursuit of her GED, and attempts to work, were

10  inconsistent with her allegations.

11      On this record, the ALJ reasonably concluded that Plaintiff's work history is

12  inconsistent with her allegations. This finding is supported by substantial evidence

13  and was a clear and convincing reason to discount Plaintiff's symptom complaints.

14  Plaintiff is not entitled to remand on these grounds.

15  **B.  Medical Opinion Evidence**

16      Plaintiff contends the ALJ erred in his analysis of the medical opinions of

17  Thomas Genthe, Ph.D., and Tasmyn Bowes, Psy.D.  ECF No. 15 at 12-19.

18      There are three types of physicians: "(1) those who treat the claimant

19  (treating physicians); (2) those who examine but do not treat the claimant

20  (examining physicians); and (3) those who neither examine nor treat the claimant

ORDER - 20

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995).

*1. Dr. Genthe*

Dr. Genthe, an examining source, rendered opinions on Plaintiff's functioning in 2012 and in 2015. Tr. 460-64, 506-13. Plaintiff only challenges the ALJ's rejection of the 2015 opinion. ECF No. 15 at 13-16. On August 10, 2015, Dr. Genthe diagnosed Plaintiff with panic disorder and other specified depressive disorder, mild. Tr. 508. Dr. Genthe opined Plaintiff has no to mild limitations in her ability to ask simple questions or request assistance and communicate and perform effectively in a work setting; marked limitations in her ability to understand, remember, and persist in tasks by following detailed instructions, and adapt to changes in a routine work setting; and moderate limitations in the remaining areas of functioning. Tr. 508-09. Dr. Genthe opined Plaintiff's impairments overall have a moderate severity rating and vocational training/services would minimize or eliminate barriers to employment. Tr. 509. The ALJ gave Dr. Genthe's opinion some weight. Tr. 717.

First, the ALJ found Dr. Genthe's opinion was entitled to less weight because Dr. Genthe did not review any records. *Id.* The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Dr. Genthe noted that he did not review any records for the evaluation. Tr. 506. Plaintiff argues this is not a valid reason to reject Dr.

Genthe's opinion, because he based his opinion on his examination of Plaintiff. ECF No. 15 at 14.  Dr. Genthe's examination report gives specific details about Plaintiff's scores from 2005, and an evaluation in 2013, and it is unclear if such information came from a review of records.  Tr. 506.  However, Dr. Genthe lacked knowledge of Plaintiff's inconsistent statements, her reports that she rarely had panic attacks, and other evidence that is inconsistent with his opinion.  *See* Tr. 714-15.  This was a specific and legitimate reason to reject Dr. Genthe's opinion.

Second, the ALJ found Dr. Genthe's opinion indicated Plaintiff's limitations were temporary in nature.  Tr. 717.  Temporary limitations are not enough to meet the durational requirement for a finding of disability.  20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").  Dr. Genthe opined Plaintiff's intellectual impairment will last indefinitely, and her psychological impairments will cause limitations for six months.  Tr. 509. However, Dr. Genthe did not diagnose Plaintiff with an intellectual disability.  Tr. 506.  As Dr. Genthe opined Plaintiff's psychological limitations would last only six months, and vocational services would minimize or eliminate barriers to employment, the ALJ reasonably found Dr. Genthe's opinion was entitled to less

weight because it was based on temporary limitations.  This was a specific and

legitimate reason to reject the opinion.

Third, the ALJ found Dr. Genthe's opinion was contradicted by the opinion

of Dr. VanFossen.  Tr. 717.  Generally, an ALJ should accord more weight to the

opinion of an examining physician than to that of a non-examining physician.  *See*

*Andrews*, 53 F.3d at 1040-41.  However, the opinion of a nonexamining physician

may serve as substantial evidence if it is "supported by other evidence in the record

and [is] consistent with it."  *Id.* at 1041.  Dr. VanFossen reviewed Dr. Genthe's

opinion and found Dr. Genthe's opinion is not supported by the medical evidence,

as Plaintiff appears "quite capable of completing simple labor tasks that do not

involve performing many calculations . . . The ratings are adjusted to the mild

range."  Tr. 514.  Dr. VanFossen opined that the opinion that Plaintiff is primarily

impaired by cognitive factors in not supported by recent normal IQ testing.  *Id.*, Tr.

717.  However, Dr. Genthe stated Plaintiff presented with "primary cognitive

deficits as the reason why she was currently not employed," Tr. 509, which

appears to be based on Plaintiff's report that she has a learning disability that

impairs her ability to work, Tr. 506.  The ALJ reasonably found Dr. Genthe's

opinion is inconsistent with Dr. VanFossen's opinion, and the ALJ discussed the

evidence that supports the opinion.  Tr. 717.  This was a specific and legitimate

reason to reject Dr. Genthe's opinion.

ORDER - 24

1    *2. Dr. Bowes*

2        Dr. Bowes, an examining source, conducted two examinations and rendered

3    two opinions on Plaintiff's functioning.  Tr. 1301-07, 1316-21.

4        a.  2018 Opinion

5        On May 24, 2018, Dr. Bowes diagnosed Plaintiff with persistent depressive

6    disorder with major depressive episodes and unspecified anxiety disorder.  Tr.

7    1303.  Dr. Bowes opined Plaintiff has no to mild limitations in her ability to

8    understand, remember, and persist in tasks by following very short and simple

9    instructions, make simple work-related decisions, be aware of normal hazards and

10   take appropriate precautions, and ask simple questions or request assistance;

11   marked limitations in her ability to understand, remember, and persist in tasks by

12   following detailed instructions and perform activities within a scheduled, maintain

13   regular attendance, and be punctual within customary tolerances without special

14   supervision; and moderate limitations in the remaining areas of functioning.  Tr.

15   1304.  She opined Plaintiff's impairments overall have a moderate rating, the

16   limitations are expected to last six to 12 months, and vocational training/services

17   would minimize or eliminate barriers to employment.  Tr. 1304-05.  The ALJ gave

18   the 2018 opinion little weight.  Tr. 718.

19       First, the ALJ found Dr. Bowes' 2018 opinion is entitled to less weight

20   because she did not review any records.  *Id.*  The extent to which a medical source

ORDER - 25

is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Dr. Bowes noted she did not review any previous psychological evaluations. Tr. 1301. As with Dr. Genthe's opinion, although the opinion was based on an evaluation, the ALJ reasonably found the opinion is entitled to less weight because Dr. Bowes did not review any records.

Second, the ALJ found Dr. Bowes' opinion indicated the limitations may be temporary in nature. Tr. 718. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). Dr. Bowes opined Plaintiff's limitations would last six to 12 months, and stated vocational services would minimize or eliminate barriers to employment, and if Plaintiff received treatment, she should be able to work. Tr. 1305. While a limitation that lasts 12 months satisfies the duration requirement, Dr. Bowes' opinion as a whole indicates she did not believe Plaintiff's limitations were likely to prevent her from working if she received employment services and/or treatment. Further, any error in rejecting the opinion in part due to the limitations being

1  temporary would be harmless, as the ALJ gave other supported reasons to reject

2  the opinion.  *See Molina,* 674 F.3d at 1115.

3          Third, the ALJ found Dr. Bowes' opinion was inconsistent with treatment

4  records.  Tr. 718.  A medical opinion may be rejected if it is unsupported by

5  medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*,

6  359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v.*

7  *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016,

8  1019 (9th Cir. 1992).  An ALJ may discredit physicians' opinions that are

9  unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, an

10  ALJ is not obligated to credit medical opinions that are unsupported by the medical

11  source's own data and/or contradicted by the opinions of other examining medical

12  sources.  *Tommasetti*, 533 F.3d at 1041.  The ALJ found Dr. Bowes' opinion was

13  unsupported by the treatment records, which document relatively benign

14  symptoms.  Tr. 718.  As discussed *supra*, while the medical records contain some

15  abnormalities on examination, the records also contain many normal examinations,

16  and even at examinations when Plaintiff has some abnormalities, she presented

17  with several other normal findings.  The ALJ reasonably found Dr. Bowes' 2018

18  opinion was inconsistent with the treatment records.

19

20

b.  2019 Opinion

On June 10, 2019, Dr. Bowes diagnosed Plaintiff with borderline personality disorder, PTSD, and unspecified depressive disorder.  Tr. 1318.  Dr. Bowes opined Plaintiff has no to mild limitations in her ability to understand, remember, and persist in tasks by following very short and simple instructions, learn new tasks, perform routine tasks without special supervision, make simple work-related decisions, and be aware of normal hazards and take appropriate precautions; moderate limitations in her ability to understand, remember, and persist in tasks by following detailed instructions, adapt to changes in a routine work setting, ask simple questions or request assistance, and set realistic goals and plan independently; marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, maintain appropriate behavior in a work setting, and complete a normal workday/workweek without interruptions from psychologically based symptoms; and severe limitations in her ability to communicate and perform effectively in a work setting.  Tr. 1319.  She opined Plaintiff's impairments overall have a marked severity rating, the limitations are expected to last 12 months or longer, and vocational trainings/services would not minimize or eliminated barriers to employment.  *Id*.  The ALJ did not specify the

1  amount of weight given to the 2019 opinion but gave multiple reasons to reject the

2  opinion.  Tr. 718.

3         First, the ALJ found Dr. Bowes' 2019 opinion lacks a supporting

4  explanation and is not supported by the examination.  *Id.*  The Social Security

5  regulations "give more weight to opinions that are explained than to those that are

6  not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any

7  physician, including a treating physician, if that opinion is brief, conclusory and

8  inadequately supported by clinical findings."  *Bray*, 554 at 1228.  The ALJ noted

9  Dr. Bowes' 2019 opinion does not contain a reasonable explanation for the

10 changes from the 2018 opinion.  Tr. 718.  The ALJ also found the opinion is not

11 supported by a narrative explanation nor the mental status examinations.  *Id.*

12 Plaintiff argues the opinion is supported by the examination, which documented

13 abnormalities including irritability, lability, and dysphoria on examination.  ECF

14 No. 15 at 18.  However, Dr. Bowes also noted Plaintiff had normal thoughts,

15 orientation, perception, memory, fund of knowledge, concentration, abstract

16 thoughts, and insight/judgment.  Tr. 1320.  As noted by the ALJ, Dr. Bowes'

17 examination does not contain an explanation regarding the changes in her opinion

18 from 2018 to 2019, despite Plaintiff's similar presentation at both examinations.

19 This was a specific and legitimate reason to reject Dr. Bowes' opinion.

20

Second, the ALJ found the opinion is inconsistent with the record as a whole.  Tr. 718.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  The ALJ found Dr. Bowes' opinion was inconsistent with Plaintiff's benign presentation to treating providers, her lack of treatment, her reported lack of symptoms on multiple occasions, and inconsistencies in the record.  Tr. 718.  As discussed *supra,* the ALJ identified multiple inconsistencies in the record such as Plaintiff's job hunting and pursuing her GED during the relevant time period, and the ALJ considered Plaintiff's lack of ongoing mental health treatment and multiple largely normal mental status examinations throughout the record.  This was a specific and legitimate reason to reject Dr. Bowes' 2019 opinion.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 30

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 23, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 31